UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
IN RE:

      DEBRA PEARL                                       CASE NO. 08-60871
      PATRICK PEARL                                Chapter 13

                      Debtors
--------------------------------------------------------
APPEARANCES:

JERRY CALVIN LEEK, ESQ.
Attorney for Debtors
107 S. Canton Rd.
Potsdam, New York 13676

MAXSEN D. CHAMPION, ESQ.
Staff Attorney, Chapter 7 Trustee
250 S. Clinton St., Suite 203
Syracuse, New York 13202

FELT EVANS LLP                                    EDWARD D. EARL, ESQ.
4-6 North Park Row                              of Counsel
Clinton, New York 13323

STEVEN R. DOLSON, ESQ.
Amicus Curiae
500 South Salina Street, Suite 610
P.O. Box 1279
Syracuse, New York 13201-1279

Hon. Stephen D. Gerling, Chief U.S. Bankruptcy Judge

**MEMORANDUM-DECISION, FINDINGS OF FACT,
CONCLUSIONS OF LAW AND ORDER**

Under consideration by the Court is an objection filed on June 3, 2008, by Mark W. Swimelar,

chapter 13 trustee ("Trustee"), to the chapter 13 plan ("Plan") filed by Patrick and Debra Pearl

("Debtors"). The hearing on confirmation was originally held on July 15, 2008, at the CourtCall

calendar in Utica, New York[1]. On August 1, 2008, eCast Settlement Corporation, as assignee of FIA Card Services, a/k/a Bank of America, filed a Memorandum of Law in Support of Objection to Confirmation of Chapter 13 Plan. Following oral argument, the confirmation hearing was adjourned to August 5, 2008, at which time the Court reserved decision.[2]

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1), (b)(2)(A) (L) and (O).

## FACTS

The Debtors filed a voluntary petition on April 17, 2008, pursuant to chapter 13 of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101-1532 ("Code"). Debtors' Plan, also filed on April 17, 2008, proposes to make monthly plan payments of $185 over a period of sixty months for an estimated dividend of 10% to unsecured creditors. According to Official Form 22C, the Debtors' current monthly income is $5,805.74. In calculating deductions allowed from Debtors' income, the Debtors have included ownership for expenses on two vehicles. The actual monthly payment

---

[1] Effective April 1, 2007, the Utica Division authorized the telephonic appearance at motion calendars using CourtCall for debtors residing in St. Lawrence, Franklin, Montgomery and Fulton Counties in the State of New York.

[2] On August 5, 2008, the Court granted Steven R. Dolson, Esq., who represents the debtors in *In re Buechi*, Case No. 07-64015, an opportunity to file an *amicus curiae* brief on the issue. On August 15, 2008, Dolson filed a Memorandum of Law in the case (Dkt. No. 22).

secured by their 2006 Nissan Sentra is $350.[3]  *See* Official Form 22C at Line 28(b) and Line 47(a).  Ownership costs under the IRS Transportation Standards amount to $489.  *Id.* at Line 28(a).  Accordingly, the Debtors list $139 in "net ownership expense for Vehicle 1."  *Id.* at Line 28(c).  In addition, the Debtors list a net ownership expense for "Vehicle 2" of $489 since the Debtors owe no future payments on "Vehicle 2."  *Id.* at Line 29(c).[4]

According to Official Form 22C, the Debtors' monthly disposable income pursuant to Code § 1325(b)(2) is $182.69.  Based on Schedules I and J, their monthly disposable income totals $497.87.

The Trustee objects to confirmation of the Debtors' proposed plan on several grounds, including the assertion that the Debtors are not entitled to claim a transportation/ownership expense on a second motor vehicle absent a lien against it on which they are obligated to make payments.

## **DISCUSSION**

---

[3] Based on the proof of claim filed by Community Bank, the Debtors' first of sixty-six monthly payments of $350.99 was due June 26, 2006.  The Court calculates that the last payment will actually be due on November 26, 2011, or approximately 18 months prior to completion of the Debtors' Plan.  Therefore, in completing the Official Form 22C, Line 47(a) is actually less than $350, thereby increasing the amount in Line 28(c) by the same amount.

[4] In their schedules, Debtors list ownership of three vehicles: 2006 Nissan Sentra, 1996 B3000 Mazda Truck and a 1999 Dodge Ram 1500.  *See* Schedule B, attached to Debtors' Petition.  Debtors have claimed the 1996 Mazda Truck and the 1999 Dodge Ram as exempt.  *See* Schedule C, attached to the Debtors' Petition.  They do not identify which of the latter two vehicles is considered to be "Vehicle 2."

The Debtors contend that this Court "should follow the holding of Bankruptcy Judge Margaret Cangilos-Ruiz in her decision in *In re Richard and Lorie Schneider*, Case No. 07-32487, 2008 WL 1885768 (Bankr. N.D.N.Y. April 28 2008). In *Schneider* the debtors claimed the IRS Local Standard deductions for ownership of two vehicles, rather than their actual expense. According to the schedules in the case and important to the matter before this Court, the debtors in *Schneider* had car payments associated with loans on the two vehicles. Judge Cangilos-Ruiz found that "[t]he only time 'actual monthly expenses' are relevant is when determining expenses for categories specified as 'Other Necessary Expenses.'" *Id.* at 5, citing Code § 707(b)(2)(B)(ii)(I) law. However, Judge Cangilos-Ruiz was not asked to decide whether an ownership expense based on the Local Standards could be claimed when the vehicle was owned free and clear of any lien.

Debtors also place reliance on *In re Kwabana Osei*, 389 B.R. 339 (Bankr. S.D.N.Y. 2008) in support of their argument that they should be allowed to deduct an ownership expense, as distinguished from an operating expense, on a vehicle that they own free and clear of any liens. In *Osei*, the debtor deducted the full amount allowed under the Local Standards for his mortgage/rental expense, which was more that the amount the debtor actually paid each month. *Id.* at 341. eCAST argued that the Local Standards were only a ceiling on the amount that could be deducted from the debtor's current monthly income. *Id.* Citing to Judge Cangilo-Ruiz's decision in the *Schneider* case, *inter alia,* the court in *Osei* concluded that the debtor was entitled to deduct the full amount permitted by the Local Standards. *Id.* at 350. However, it is important to note that the court in *Osei* made it clear that "this case does not decide whether a debtor could deduct a car payment expense if the debtor owned his or her car free and clear of any liens." *Id.*

                                                                                                              5

at n.8.

   The court in *Osei, in dicta,* acknowledged that several courts that have addressed the issue concluded that a debtor may deduct an ownership expense for a vehicle regardless of whether the vehicle is subject to any automobile loan or lease payment. Some of those decisions include *In re Pearson,* 390 B.R. 706 (10th Cir. BAP 2008); *In re Kimbro*, 389 B.R. 518 (6th Cir. BAP 2008); *In re Young*, Case No. 08-10012, 2008 WL 3274425 (Bankr. D.Mass. Aug. 8, 2008); *In re May,* 390 B.R. 338 (Bankr. S.D. Ohio 2008); *In re Mati*, 390 B.R. 11 (Bankr. D.Mass. 2008); *In re Roberts*, Case No. 07-210247, 2008 WL 542503 (Bankr. D. Conn. Feb. 28, 2008); *In re Haley*, 354 B.R. 340 (Bankr. D.N.H. 2006); *In re Farrar-Johnson,* 353 BR. 224 (Bankr. N.D.Ill. 2006). However, the majority of the appellate courts considering this question, with the exception of *Kimbro* and *Pearson,* have concluded that a vehicle ownership expense is only applicable if a debtor is, in fact, making a payment on an automobile loan. *See In re Wilson,* 383 B.R. 729 (8th Cir. BAP 2008); *In re Ransom*, 380 B.R. 799 (9th Cir. BAP 2007)*; In re Meade*, 384 B.R. 132 (W.D.Tex. 2008)*; Grossman v. Sawdy (In re Sawdy),* 384 B.R. 199 (E.D. Wis. 2008); *Wieland v. Thomas(In re Thomas)*, 382 B.R. 793 (D. Kan 2008); *In re Deadmond*, 2008 WL 191165 (D.Mont. Jan. 22, 2008); *Fokkena v. Hartwick (In re Hartwick)*, 373 B.R. 645 (D. Minn. 2007); *In re Ross-Tousey,* 368 B.R. 762 (E.D. Wis. 2007).

   Consistent with the split in authority, a number of different rationales supporting the various conclusions have evolved: "(1) the 'Plain Meaning' Rationale; (2) the Unfair Results Rationale; (3) the 'Ownership Liability' Distinction Rationale; (4) the Policy Rationale; (5) the Applicable vs. Actual Rationale; and (6) the Reliance on IRS Materials Rationale." *In re Swan*, 368 B.R. 12, 17 (Bankr. N.D.Cal. 2007), citing *In re Sawdy*, 362 B.R. 898, 903-913 (Bankr.

6

E.D.Wis. 2007), *rev'd sub nom. Grossman v. Sawdy*, 384 B.R. 199 (E.D. Wis. 2008). Of particular import to the courts' discussions have been the latter two, *see Swan*, 368 B.R. at 17, and it is those two on which this Court will focus.

Courts have recognized that Congress's intent in enacting the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") was to put a halt to what it deemed abuses of the bankruptcy system:

> The heart of BAPCPA's consumer bankruptcy reform consists of the implementation of an income/expense screening mechanism ("needs-based bankruptcy relief" or "means-testing"), which is intended to ensure that debtors repay creditors the maximum they can afford.

H.R.Rep. No. 109-31, pt. 1 at 2 (2005). Yet, the legislative history of BAPCPA provides little in the way of explanation for the use of the word "applicable" as distinguished from the use of the word "actual" in Code § 707(b)(2)(A)(ii)(I). The first clause of Code § 707(b)(2)(A)(ii)(I), as applied to chapter 13 debtors by Code § 1325(b)(3) in determining amounts reasonably necessary to be expended by debtors, states that

> [t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards [which address housing and utilities, including mortgage/rent expenses, as well as transportation expenses for both operation/public transportation and ownership], and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides . . . .

11 U.S.C. § 1325(b)(3). In the context of a chapter 13, the courts draw a distinction between Congress's use of the word "applicable" when referring to the amounts in the Local Standards identified as transportation ownership expenses and the word "actual" when referring to the "Other Necessary Expenses" category. Those courts allowing a deduction for transportation ownership, regardless of whether or not the debtor had an actual car payment at the time of plan

confirmation, do so under the rationale that the Local Standards represent fixed allowances for ownership of up to two vehicles. For those courts, the word "applicable" modifies "amounts specified" in the Local Standards, as determined by the debtor's place of residence. On the other hand, those asserting that the word "applicable" modifies "monthly expenses," take the position that if there is no monthly payment because the vehicle is owned outright, the debtor is not entitled to claim an ownership expense. The latter position finds support in a reliance on the IRS Manual and Financial Analysis Handbook ("IRS Guidelines"), which are used by the IRS in calculating repayment of delinquent taxes.

According to the IRS Guidelines, if a taxpayer has no car payment, only the operating cost portion associated with the vehicle is used to calculate the allowable transportation expenses. *See Ransom*, 380 B.R. at 806. The same IRS Guidelines also state that a taxpayer "will be allowed the local standard or the amount actually paid, whichever is less." Part 5, Chapter 15, Section 1.7, Subsection 4 of the IRS Manual, found at http://www.irs.gov/irm/index.html. Thus, under the IRS Guidelines approach, the Local Standards would serve as caps, rather than fixed allowances, with respect to ownership expenses associated with a vehicle.

However, the trend appears more and more to be in favor of a strict application of the IRS standards, without consideration of the IRS Guidelines. *See Pearson,* 390 B.R. at 714; *Kimbro*, 389 B.R. at 525-31; *In re Young*, 2008 WL 3274425 at *11; *May,* 390 B.R. at 348-49; *Mati*, 390 B.R. at 23. The application of the Local Standards for transportation costs, rather than relying on the IRS Guidelines, has been found to further "the Congressional policy of the fairness of a uniform allowance and the avoidance of discretionary adjustments." *In re Armstrong*, 370 B.R. 323, 331 (Bankr. E.D. Wash. 2007); *In re Long*, 372 B.R. 467, 470-71 (Bankr. W.D.Wis. 2007)

8

(quoting Eugene R. Wedoff, *Mean Testing in the New 707(b),* 79 AM. BANKR. L.J. 231, 255 (2005) for the proposition that "'a plain reading of the statute would allow a deduction of the amounts listed in the Local Standards even where the debtor's actual expenses are less.'"); *see also In re Lynch*, 368 B.R. 487, 491 (Bankr. E.D. Va. 2007) (stating "that Congress indicated a desire to implement a bright line rule when enacting the means test, and use of the Internal Revenue Service's guidance documents to disallow the expense would instead return the courts to a flexible analysis of expenses requiring excessive investigation into IRS principles and practices . . . and could enable the IRS to become a rule-making body for bankruptcy law"); *In re Guzman*, 345 B.R. 640, 646 (Bankr. E.D.Wis. 2006) (pointing out that the statute specifies that such expenses "shall" be determined in accordance with IRS standards despite the fact that the result of such enforcement is contrary to the popular notion that BAPCPA would require well-to-do debtors to repay as much of their debts as possible . . . ." ).

It is important to recognize that in a prior version of BAPCPA that was never passed by Congress, projected monthly net income required the calculation of expenses based on "the expense allowances under the applicable National Standards, Local Standards, and Other Necessary Expenses allowances . . . as determined under the Internal Revenue Service financial analysis for expenses in effect as of the date of the order of relief." *In re Fowler*, 349 B.R. 414, 419 (Bankr. D.Del. 2006) (quoting H.R. 3150, 105th Congress (1998)). That language ultimately was deleted from the bill (*see* H.R. Rep. 105-540 (May 18, 1998), H.R. 3150, 105th Congress (1998)) and simply provided that the debtor take the "applicable monthly expense amounts specified under the National and Local Standards." *Fowler*, 349 B.R. at 419; *May*, 390 B.R. at 345, n.7. The court in *Fowler* concluded that "it should look only to the amounts set forth in the

9

Local Standards." *Fowler*, 349 B.R. at 419; *In re Enright*, Case No. 06-10747, 2007 WL 748432, at *5-7 (Bankr. M.D.N.C. 2007). As pointed out by the court in *Armstrong,* the Advisory Committee Note to Form B22C states "that although the IRM treats Local Standards as 'caps' or maximum allowed expenses, the form was intentionally developed to require the unadjusted application of the Local Standard." *Armstrong*, 370 B.R. at 328, citing *In re Demonica*, 345 B.R. 895 (Bankr. N.D.Ill. 2006); *see also In re Prince*, Case No. 06-10328C-7G, 2006 WL 3501281, at *3, n.8 (Bankr. M.D.N.C. Nov. 30, 2006) (indicating that "it appears that the reference to the National and Local Standards in section 707(b)(2)(A)(ii)(I) was intended to provide a set of standard allowances that could be easily and uniformly applied by the courts in administering the means test. To read section 707(b)(2)(A)(ii)(I) as permitting the courts to comb through the Internal Revenue Manual in order to pick and choose provisions to apply in a given case injects great uncertainty into the process of determining a debtor's expenses for purposes of the means test").

      This Court concurs with the view that deferring to the approach taken by the IRS, as set forth in the IRS Guidelines, would to a certain extent enable it to become "a rule-making body for bankruptcy law," thereby assigning a legislative function to an agency. *See Lynch,* 368 B.R. at 492. The Court concludes that for purposes of the Bankruptcy Code, the Local Standard amounts are fixed allowances, rather than caps, and are applicable to the Debtors in this case, despite the fact that there is no lien on their second vehicle.[5] This comports with the intention

---

[5] The Court, in so ruling, does believe that debtors should have to provide to the chapter 13 trustee documentation concerning the vehicle for which they are seeking to claim ownership expenses, including proof of not only ownership, but also current registration and insurance. This is consistent with the Court's recent holding in the case of *In re Frederick*, Case No. 08-60260, that in the event that a chapter 13 debtor provides in his/her plan for surrender of the vehicle,

10

of Congress to eliminate the discretion of the courts in ****  As pointed out by the United States

Bankruptcy Judge Eugene R. Wedoff,

> it is more reasonable to permit a debtor to claim the Local Standard ownership expense based on the number of vehicles the debtor owns or leases, rather than on the number for which the debtor makes payments.  This approach reflects the reality that a car for which the debtor no longer makes payments may soon need to be replaced (so that the debtor will actually have ownership expenses), and it avoids arbitrary distinctions between debtors who have only a few car payments left at the time of their bankruptcy filing and those w ho finished making their car payments just before the filing.

Eugene R. Wedoff, *Mean Testing in the New 707(b),* 79 AM. BANKR. L.J. at 257-58.

> Also, while not binding on the Court, it is worth mentioning that
>
> the advisory committee note to Form B22C indicates that the ownership/lease component does not require the debtor to make lease or loan payments on the vehicle.  *In re Crews*, No. 06-13117, 2007 WL 626041 at *4 (Bankr. N.D. Ohio Feb. 23, 2007).  The advisory committee note states: "The ownership/lease component . . . may involve debt payment."  The court concluded that the use of the word "may" implies that debt payment on the vehicle is not a prerequisite in asserting the deduction.

*Ransom*, 380 B.R. at 804, n.12.

> Also, as recently pointed out by the court in *Mati*,
>
> [t]his interpretation is supported by the views of the Advisory Committee on Bankruptcy Rules which drafted the Official Form.  Although the Bankruptcy Rules Committee initially took no position on whether a debtor could claim the Local Standard transportation ownership/lease expense on Line 28 of Official Form 22C if the debtor was not making a note or lease payment, it later rejected the suggestion that the form allow a vehicle ownership deduction *only* if the debtor is actually making note or lease payments on a vehicle.  *See* 2005 Committee Note to Official Forms B22A, B, and C at http://www.uscourts.gov/rules/BK-Forms-08-Official/B_22_CN-Cum08.pdf and the Minutes of the Meeting of March 8-10, 2006, *http://www.uscourts.gov/rules/Minutes/BK03-2006-min.pdf* at p. 18. (Footnote 8:

---

there is no longer any ownership and no further payments to the secured creditor to be deducted in calculating disposable income in the context of confirming the plan.

> The FSR [Financial Services Roundtable] suggested changing the forms to allow an automobile ownership deduction only if the debtor is actually making lease or note payments on an owned vehicle. *The working group recommended no changes because this issue was considered and rejected by the Committee at its last meeting.* (Emphasis in original)

*Mati*, 390 B.R. at 19.

The Court's conclusion recognizes that ownership involves more than simply a monthly car payment. There are also costs associated with insurance and registration. If a debtor has payments of $3,000 left on an automobile loan at the time of confirmation, e.g. $300 per month for ten remaining months, under the calculations on Official Form 22C, this would amount to a $50 per month expense at Line 47; however, this would also result in $439 per month ownership expense at Line 28 or 29. Should it be any different if there is only $1,800 left on the automobile loan, e.g. $300 per month for six remaining months, with confirmation occurring within three months of filing. Completing Official Form 22C, the debtor would list $30 per month over the 60 months of the plan ($1,800/60) at Line 47 and an allowable ownership expense of $459 per month at Line 28 or 29. Should the fact that the debtor does not have a car payment at the time of his/her filing and confirmation of a plan form a reasonable basis for refusing to allow him/her an ownership expense for a vehicle that is still registered, insured and being operated by the debtor? The Court does not believe that Congress intended to create so many roadblocks for an above-median debtor that proposing a plan to repay his/her creditors becomes an impossibility. As noted by United States Bankruptcy Judge William T. Thurman in his concurrence in *Pearson*,

> it makes little sense to deny an ownership deduction to a frugal debtor who, although he has fully paid for his used car, finds himself in need of bankruptcy relief, while allowing the deduction to a more "aggressive" debtor who has acquired a late model car by incurring a large unsecured debt. . . . "every vehicle owner incurs ownership expenses and that is so regardless of debt or lease payments."

*Pearson,* 390 B.R. at 715, quoting *Kimbro*, 389 B.R. at 530-31.

Based on the foregoing, it is hereby

ORDERED that the Trustee's objection to the Debtors' plan, to the extent that it provides for the inclusion of an ownership expense for their second vehicle in calculating the Debtors' current monthly income, is denied; and it is further

ORDERED that confirmation of the Debtors' plan be rescheduled for the Utica CourtCall calendar on Tuesday, October 14, 2008, at 2:00 p.m.


Dated at Utica, New York

this 10th day of September 2008

/s/   Hon. Stephen D. Gerling
STEPHEN D. GERLING
Chief U.S. Bankruptcy Judge